IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


JOSE A. ARAGON,

      **Plaintiff,**

vs.                                                                              No.  99cv0675 JC/JHG

**KENNETH S. APFEL,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**


### MAGISTRATE JUDGE'S PROPOSED FINDINGS
### AND RECOMMENDED DISPOSITION

This matter is before the Court on Plaintiff's (Aragon's) Motion to Reverse and/or Remand Administrative Decision, filed March 6, 2000.  The Commissioner of Social Security issued a final decision denying Aragon's application for a disability insurance benefits and supplemental security income.  The United States Magistrate Judge, having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, finds the motion to reverse or remand is well taken and recommends that it be GRANTED.

Aragon, now fifty-one years old, filed his application for disability insurance benefits and supplemental security income on January 30, 1997, alleging disability since April 30, 1996, due to organic brain syndrome secondary to alcoholism, osteoarthritis (neck pain, left shoulder and left knee pain, and pain in left thumb and index finger) and depression.  Aragon has a twelfth grade education with past relevant work as a custodian and cemetery caretaker.  On September 14, 1998, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding Aragon had the following medically determinable severe impairments: organic brain syndrome, secondary to

alcoholism; osteoarthritis; and depression.  However, the ALJ determined these impairments, singly or in combination, did not meet or equal in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1.  The ALJ further found Aragon's subjective complaints were credible to the extent they were compatible with the residual function capacity for sedentary work.  Aragon filed a Request for Review of the decision by the Appeals Council.  On June 4, 1999, the Appeals Council denied Ruiz' request for review of the ALJ's decision.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Aragon seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.

20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse or remand, Aragon makes the following arguments: (1) the ALJ erred in applying the grids in view of the nonexertional impairments accepted as facts in the record; (2) the ALJ failed to fully develop the record in view of the recommendations for further mental evaluation; and (3) the ALJ failed to discuss or give weight to testimony concerning his fatigue, which required frequent bed rest, and his mental impairments of poor memory and irritability.

Aragon argues the ALJ erred at step five of the sequential evaluation process when he relied on the medical-vocational guidelines (the grids) to find he was not disabled. 20 C.F.R. § Pt. 404, Subpt. P, App. 2, Table No. 1, Rule 201.21. As a general rule the grids should not be applied conclusively "unless the claimant could perform the **full range** of work required of [the pertinent RFC] category on a daily basis and unless the claimant possesses the physical capabilities to perform most of the jobs in that range." *Ragland v. Shalala*, 992 F.2d 1056, 1057 (10th Cir.

1993)(emphasis added).  "[R]esort to the grids is particularly inappropriate when evaluating nonexertional limitations such as pain." *Id.*  The grids may, however, be used to direct a conclusion if the claimant's nonexertional impairments do not significantly reduce the underlying job base.  *See Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995)(holding that the ability to perform a "substantial majority" of work in RFC assessment suffices for purposes of the grids).  This is because only significant nonexertional impairments limit the claimant's ability to do the full range of work within a classification.  *See Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993).

> In his Decision, the ALJ found:
>
> Once a claimant has established that past relevant work cannot be performed, the burden shifts to the Commissioner to show that there are other jobs existing in significant numbers in the national economy which can be performed consistent with the medically determinable impairments, functional limitations, age, education and work experience.  Considering claimant's age, education, past work experience, and residual functional capacity for a **limited range** of sedentary work which slightly compromises the sedentary occupational base, the Medical Vocational Guidelines Rule 201.21 provides of (sic) framework for a finding of "not disabled." (emphasis added).

Tr. 24, 25.  The ALJ recognized that Aragon could not perform all sedentary work jobs.  Thus, the ALJ was precluded from relying on the grids.  Accordingly, the Court will remand the case for the purpose of obtaining vocational expert testimony about the occupational consequences of Aragon's nonexertional limitations.

Aragon also argues that the ALJ failed to fully develop the record in view of the recommendations for further mental evaluation.  Aragon contends "both mental health professionals recommended further testing or evaluation of the plaintiff's symptoms."  Pl.'s Mem. in Supp. of Mot. to Remand at 9.  The record indicates Aragon was further evaluated by

specialists.  On October 16, 1997, Warren M. Steinman, Ph.D. evaluated Aragon and recommended further evaluation of his short term memory difficulties and possible Post-traumatic Stress Disorder.  Tr. 153-56.  On December 26, 1997, Dr. Fineberg, a psychiatrist, evaluated Aragon.  Tr. 171-73.  Dr. Fineberg relied on his own evaluation of Aragon and the psychological testing done by Dr. Steinman.  Dr. Steinman "did not see any symptoms of post traumatic stress disorder."  Tr. 173.  Dr. Steinman did find ongoing depression and opined Aragon's "condition, both physically and psychologically" needed to be evaluated thoroughly.  *Id.*  On June 1, 1998, Dr. Michael Baten, a neurologist, at Aragon's request, examined him and opined Aragon may be suffering from "possible carpal-tunnel syndrome and osteoarthritis."  Tr. 152.  Dr. Baten recommended "cervical spine x-rays , nerve conduction and possibly EMG of the upper limbs to assess the possibility of an entrapment neuropathy such as carpal tunnel syndrome."  *Id.*  On June 16, 1998, Aragon had cervical spine x-rays done which indicated "mild cervical spine degenerative changes in the lower cervical spine."  Tr. 159.  The record also reflects Aragon was receiving Zoloft for his depression in January, 1998.  Tr. 196.  On January 20, 1998, Aragon reported "feeling less depressed and anxious."  Tr. 203.  Prior to these visits, Aragon was seen at the Health Centers of Northern New Mexico for left knee pain on May 1, 1997.  Tr. 131.  At that visit, the physician questioned whether Aragon was suffering from depression and noted "depressed mood, low energy," but sleep and appetite were unaffected.  *Id.*  The physician's notes indicate Aragon was given a trial of Zoloft .  *Id.*

   At the administrative hearing, Aragon complained only about his physical pain and his inability to deal with others due to his anger and agitation.  Tr. 37-41.  The only mention of depression came from Aragon's attorney.  When Aragon's attorney questioned him about his

"major depression" and whether Dr. Steinmen told him he should get counseling, Aragon replied "I cannot forget even what that that visit that - - because he was writing everything down that I was telling him and, and a lot was, was talked about and  - - but he never mentioned that I should get, you, treatment for post traumatic stress disorder."  Tr. 40.  Aragon's attorney continued to question Aragon about his depression: "And he (Dr. Steinman) said that that was caused by your depression, your past alcohol dependency, and post traumatic stress disorder?"  *Id.*  In response, Aragon replied, "I can't really remember that well."  Tr. 40.

In his Decision, the ALJ found that Aragon had the following medically determinable severe impairments: organic brain syndrome, secondary to alcoholism; osteoarthritis; and depression.  Tr. 19.  The ALJ further found the depression did not "meet or equal the requirements of any impairment in the Listing of Impairments, Appendix 1, Subpart P, Regulations No. 4."  *Id.*  The ALJ further found that Aragon's "depression appear[ed] to be well-controlled with medication."  Tr. 23.

In *Cruse v. Dep't of Health & Human Servs.*, 49 F.3d 614 (10th Cir. 1995), the Court of Appeals for the Tenth Circuit set forth the procedure the Commissioner must follow when there is evidence of a mental impairment that allegedly prevents a claimant from working.  The Commissioner must follow the procedure set forth in 20 C.F.R. § 404.1520a and the Listing of Impairments and document the procedure.  *Id.* at 617.  This requires the Commissioner "to determine the presence or absence of 'certain medical findings which have been found especially relevant to the ability to work,' sometimes referred to as the 'Part A' criteria."  *Id.* (quoting 20 C.F.R. § 404.1520a(b)(2)). The Commissioner must then "evaluate the degree of functional loss resulting from the impairment, using the 'Part B' criteria."  *Id.* (quoting 20 C.F.R. §

6

404.1520a(b)(3)).  The ALJ must then record his or her conclusions by preparing a Psychiatric Review Technique Form (PRT form) that "tracks the listing requirements and evaluates the claimant under the Part A and B criteria." *Id.*  At the administrative hearing, the regulations allow the ALJ to complete the PRT form with or without the assistance of a medical advisor and require the ALJ to attach the form to his or her written decision.  *Id.*   In this case, the ALJ failed to follow this procedure.  Accordingly, the Court will remand to allow the ALJ to complete the analysis under 20 C.F.R. § 404.1520a and Listing 12.04, Affective Disorders.

Finally, Aragon's argument that the ALJ failed to discuss or give weight to testimony concerning his fatigue, which required frequent bed rest, and his mental impairments of poor memory and irritability is without merit.  While "[t]he record must demonstrate that the ALJ considered all of the evidence, . . . an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  In this case, the ALJ specifically mentioned Aragon's need to lie down due to his medication making him drowsy(Tr. 20), his irritability (Tr. 25), and his memory (Tr. 22).  The ALJ, however, found Aragon's subjective complaints were credible to the extent they were compatible with the residual function capacity for sedentary work.

## RECOMMENDED DISPOSITION

The ALJ did not apply correct legal standards and his decision is not supported by substantial evidence. This case should be remanded for the purpose of obtaining vocational expert testimony about the occupational consequences of Aragon's nonexertional limitations and to evaluate Aragon's mental impairment by completing the analysis under 20 C.F.R. § 404.1520a and Listing 12.04, Affective Disorders.

**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.